IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robert Peoples, | C/A No.: 1:08-3977-CMC-SVH |
| Plaintiff, | |
| vs. | |
| | REPORT AND RECOMMENDATION |
| Sgt. Karl Vonmutius, Capt. D. Nunally, Lt. Kevin Williams, Ofc. Uriel Palmer, Ofc. Cox, Ofc. Mark Selby, Cpl. Albert Smith, Nurse Denise Norwood, and Capt. William Brighthart, | |
| Defendants. | |

Plaintiff, who is proceeding *pro se* in this action, is an inmate at Lieber Correctional Institution ("LCI"). Plaintiff's claims are construed as asserted under 28 U.S.C. § 1983, alleging various constitutional violations. Before the court are the following motions: (1) Defendants' Motion for Summary Judgment [Entry #63]; (2) Plaintiff's Motion for Summary Judgment [Entry #92]; (3) Plaintiff's Motion for Ruling on Summary Judgment [Entry #105]; (4) Plaintiff's Motion for a Preliminary Injunction [Entry #121]; and (5) Plaintiff's Motion to Compel [Entry #127]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I.   Factual and Procedural Background

Plaintiff filed his complaint in this action on December 11, 2008. The case was stayed from April 23, 2009 until July 13, 2009, while Plaintiff was treated at a mental

health institution. Defendants filed their motion for summary judgment on September 15, 2009. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #64]. Plaintiff filed a response in opposition to Defendants' motion [Entry #82]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted.

On January 10, 2008, Plaintiff allegedly threatened to throw a cup of his own feces on Nurse Frazier. According to Plaintiff, Lt. Williams told him the following day that he would be stripped of his property (i.e. "stripped out") for threatening Nurse Frazier, to which Plaintiff responded that there "was no way he was giving up his property for an incident that took place the day before." (Compl. 3). Defendants then began a "forced cell movement" to move Plaintiff, which was videotaped. Plaintiff claims Defendant Von Mutius (incorrectly named as Sgt. Vonmutius) "maced" him in the face, even though Plaintiff claims he was not resisting. (*Id*.) Plaintiff then alleges that Defendants began punchinghim in the back of the head. (Compl. 3). According to Plaintiff, he was then slammed on the rock in front of his cell. (Compl. 4). Once the restraints were in place, Defendants carried Plaintiff to the restraint chair, during which Plaintiff alleges he was dropped on his face twice. (Compl. 4–5). Plaintiff claims the restraint chair was illegally altered from its original manufacture because it did not have straps. According to Plaintiff, while he was being restrained in the chair, a mask was placed over his face and

he alleges it was placed backwards, causing him trouble breathing. (*Id.*) Plaintiff admits that when Nurse Norwood came to check on Plaintiff in the chair, she took the mask off in response to Plaintiff's complaints. (*Id.*) Plaintiff claims he told Nurse Norwood he had "just been maced and place[d] in the restraint chair without the opportunity to wash the mace out of his face and eyes." (Compl. 6). Plaintiff claims that instead of allowing him to wash his face and eyes, Nurse Norwood wiped his face once with a wet paper towel, which he claims made it burn more. (*Id.*) Plaintiff claims that despite his pleas, he was not let out of the restraint chair for four hours. Plaintiff further complains that when he returned to his cell, it had been stripped of all property and he was deprived of his property for 72 hours. (*Id.*) Plaintiff claims he has suffered bruises, cuts and scrapes as a result of the mace,

Defendants statement of the facts is markedly different from Plaintiff's. According to Defendants, Von Mutius approached Plaintiff's cell and gave him a directive to back up to his flap in order to be handcuffed for the cell inventory. Defendants claim Plaintiff refused to comply with these directives and became belligerent. (Von Mutius and Williams Affs., Entries #63-2, 63-3). A forced cell movement team was therefore assembled and activated pursuant to institutional policy. Defendants allege Sergeant Von Mutius discharged his chemical munitions briefly into Plaintiff's facial area, because his behavior was escalating and he was not complying with orders. (*Id.*; *see also*, Report on Use of Force at Entry #63-5 (indicating 4.9 grams of chemical munition used)). Plaintiff thereafter complied. (*Id.*)

Plaintiff was placed in the restraint chair at approximately 4:40 p.m. (*Id.*) He was assessed by the institutional nurse, who cleaned his facial area and found no distress or injuries. (*Id.*) Defendants claim Plaintiff was thereafter checked every 15 minutes while under restraint. (*Id.*) Plaintiff was released from the restraint chair at approximately 8:50 p.m., checked by medical, and returned to his cell. According to Defendants, at no point in time was Plaintiff punched, kicked, or otherwise abused or injured. (*Id.*) Defendants maintain the restraint chair was in proper condition and appropriate for use. Plaintiff was thereafter stripped of his property for 72 hours, and charged in accordance with his behavior. (*Id.*)

II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to

the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322–323.

III.   Analysis

    A.   Excessive Force

Plaintiff claims Defendants's use of force was excessive in violation of his Eighth Amendment rights. It is well-established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992).

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers

applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm' ... 'contemporary standards of decency are always violated ... whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 130 S.Ct. at 1179 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of ... breaches of prison discipline." *Id.* at 322.

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors

include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

After applying the *Whitley* factors to the facts at hand, the court finds Plaintiff has not established a claim for excessive force. The evidence in the record demonstrates the forced cell movement did not involve excessive force. Besides Plaintiff's own conclusory allegations, there is no evidence in the record, including the video recording of this incident, which the court has reviewed, that Plaintiff was punched, kicked, or dropped on his face during the forced cell movement. *See Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding the following after a review of use of force haircut involving a restraint chair: "Although the undersigned does not make a credibility determination, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, the use of force was necessary as Plaintiff admits he told Defendant Williams that "there was no way he was giving up his property for an incident that took

include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

After applying the *Whitley* factors to the facts at hand, the court finds Plaintiff has not established a claim for excessive force. The evidence in the record demonstrates the forced cell movement did not involve excessive force. Besides Plaintiff's own conclusory allegations, there is no evidence in the record, including the video recording of this incident, which the court has reviewed, that Plaintiff was punched, kicked, or dropped on his face during the forced cell movement. *See Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding the following after a review of use of force haircut involving a restraint chair: "Although the undersigned does not make a credibility determination, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, the use of force was necessary as Plaintiff admits he told Defendant Williams that "there was no way he was giving up his property for an incident that took

include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

After applying the *Whitley* factors to the facts at hand, the court finds Plaintiff has not established a claim for excessive force. The evidence in the record demonstrates the forced cell movement did not involve excessive force. Besides Plaintiff's own conclusory allegations, there is no evidence in the record, including the video recording of this incident, which the court has reviewed, that Plaintiff was punched, kicked, or dropped on his face during the forced cell movement. *See Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding the following after a review of use of force haircut involving a restraint chair: "Although the undersigned does not make a credibility determination, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, the use of force was necessary as Plaintiff admits he told Defendant Williams that "there was no way he was giving up his property for an incident that took

place the day before." (Compl. 3). In addition, there is a rational relationship between the need for force and the amount of force used, as by Plaintiff's own account of the incident, he was resistant to being stripped of his property resulting from his prior disciplinary infraction of threatening Nurse Frazier. Here the record also shows that Defendants' use of a small amount (4.9 grams) of chemical munition was reasonable, as Plaintiff was disregarding direct orders.

Plaintiff also admits that Nurse Norwood checked him for injury following the forced cell movement and removed the mask in response to Plaintiff's complaints. Plaintiff also admits that Nurse Norwood cleaned him with a wet paper towel after Plaintiff complained of being maced. Finally, it does not appear, particularly from the video recording, that Defendants used greater force than was necessary to effect the forced cell movement.

Therefore, after balancing the *Whitley* factors, the court finds Plaintiff can not establish that Defendants acted maliciously or sadistically. Thus, Plaintiff has failed to state a claim of excessive force against the Defendants and Plaintiff's claim should be dismissed.

    B.    Medical Indifference

Plaintiff also claims that Defendants have demonstrated deliberate indifference to Plaintiff's serious medical needs, and that Plaintiff has sustained permanent eye damage after being sprayed with chemical munition, based on a change in his vision records from 2005 to 2008. However, Plaintiff admits that he was checked by Nurse Norwood

immediately following the incident. He further admits that she wiped his facial area with a wet paper towel.

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 105–106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-36 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir.1987); *see also Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995) (applying *Daniels* and *Ruefly*: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Brooks v.*

*Celeste*, F. 3d 125 (6th Cir. 1994) ("Although several courts prior to the Supreme Court's decision in *Farmer v. Brennan*, *supra*, held that 'repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise."); *Sellers v. Henman*, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); *White v. Napoleon*, 897 F.2d 103, 108-109 (3rd Cir. 1990); *Smart v. Villar*, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

In the case at hand, Plaintiff admits he was checked by Nurse Norwood who ordered Plaintiff's mask be removed. He also admits his face was cleansed with a wet paper towel. Therefore, although Plaintiff may disagree about the proper treatment, he has failed to allege facts constituting deliberate indifference.

C.  Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations.

Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

C. Plaintiff's Motion for Injunctive Relief

Plaintiff filed a motion for injunctive relief claiming that Defendants Von Mutius and Williams have threatened him and harassed him, although Plaintiff provides no specific information about these alleged threats.

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). "Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a 'clear showing' that, among other things, it is likely to succeed on the merits at trial." *Id.* (citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, --- U.S. ----, ----, 129 S.Ct. 365, 374 (2008). By statute, the PLRA grants courts the authority to enter a temporary restraining order or an order for preliminary injunctive relief in civil actions concerning prison conditions; however,

> [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings

required under subsection (a) (1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2).

Traditionally, preliminary injunctions are sought to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). Mandatory preliminary injunctions, in comparison, compel action. The Fourth Circuit explained:

> "Mandatory preliminary injunctions [generally] do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). That is to say, a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind.

*Id*. at 526. Here, Plaintiff's motion for injunctive relief must fail. Plaintiff has not clearly stated why he believes he will suffer irreparable harm, nor has he shown he is likely to succeed on the merits. Therefore, Plaintiff has failed to establish the elements necessary to demonstrate the need for a preliminary injunction.

D.  Plaintiff's Motion to Compel

In his motion to compel, Plaintiff alleges that Defendants have somehow altered or edited the video recording in this case, which he alleges was recorded on a VHS tape and not a DVD, as Defendants provided to this court and to Plaintiff. However, Plaintiff has failed to provide any basis for believing the video recording was altered and his motion must therefore be denied.

IV.  Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #63] be granted and Plaintiff's Motion for Injunctive Relief [Entry #121] and Motion to Compel [Entry #127] be denied. In light of the court's recommendation on Defendants' summary judgment motion, it is also recommended that Plaintiffs' Motion for Summary Judgment [Entry #92] be denied and Plaintiff's Motion for Ruling on Summary Judgment [Entry #105] be deemed moot.

IT IS SO RECOMMENDED.

July 30, 2010  
Florence, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**