IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Robert Peoples, former #270600, | ) | C/A NO. 1:08-3977-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **OPINION and ORDER** |
| | ) | |
| Sgt. Karl Vonmutius; Capt. D. Nunnally; | ) | |
| Lt. Kevin Williams; Ofc. Uriel Palmer; | ) | |
| Ofc. Cox; Ofc. Mark Selby; Cpl. Albert | ) | |
| Smith; Nurse Denise Norwood; Capt. | ) | |
| William Brighthart; et al. All Ind. & Ofc. | ) | |
| Capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Plaintiff's *pro se* complaint alleging violations of 42 U.S.C. § 1983.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(d), DSC, this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On July 30, 2010, the Magistrate Judge issued a Report recommending that Defendants' motion for summary judgment be granted, that Plaintiff's motion for preliminary injunction be denied, and that this matter be dismissed with prejudice. The Magistrate Judge advised Plaintiff of the procedures and requirements for filing objections to the Report and the serious consequences if he failed to do so. Plaintiff filed timely objections to the Report on August 4, 2010.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court.

1

*See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After conducting a *de novo* review as to objections made, and considering the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and Plaintiff's objections, the court declines to adopt the Report in its entirety.[1] First, the Report makes credibility determinations of the evidence against the non-moving party. Additionally, or perhaps as a result, the Report fails to apply the *Whitley v. Albers*, 475 U.S. 312 (1986), factors in the context of the use of a chemical munition against a prisoner as enunciated in *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). However, the undersigned concludes after a thorough review of the record and the videotape of the incident, that for other reasons, the use of chemical munitions by Defendant Von Mutius[2] did not violate the Eighth Amendment. Additionally, the undersigned finds that Plaintiff's contentions relating to his placement in an "altered" restraint chair are without merit. Finally, "Defendants'" alleged actions regarding a supposed prohibition of Plaintiff washing the mace from his face and eyes after the gassing were, at most, negligent, which is not actionable under 42 U.S.C. § 1983.

---

[1]Because Plaintiff is no longer in custody of the South Carolina Department of Corrections (SCDC), the Report's discussion and recommendation as to Plaintiff's motion for preliminary injunction or temporary restraining order is not reviewed here as that motion is moot.

[2]Plaintiff incorrectly identifies this Defendant as Karl "Vonmutius."

However, the court finds that a genuine issue of material fact exists as to the narrow issue of whether Defendants Von Mutius and Brighthart used excessive force in violation of Plaintiff's Eighth Amendment rights during the time period between Plaintiff's removal from his cell and his transport to and placement in the restraint chair. Moreover, as the right to be free from the excessive use of force was clearly established at the time of this incident, qualified immunity is not available to these Defendants. Finally, the Report's analysis of the availability of qualified immunity is in error, particularly as to purported actions by Defendants Von Mutius and Brighthart outside Plaintiff's cell which may not have been recorded on videotape.

Therefore, for the reasons discussed below in Section III of this Order, the court **grants in part and denies in part** Defendants' motion for summary judgment. Defendants Von Mutius and Brighthart are **denied** summary judgment. Defendants Nunnally, Williams, Cox, Selby, Palmer, and Smith are **granted** summary judgment and are dismissed from this matter with prejudice.

As discussed below in Section II.B, Defendant Norwood is dismissed from this matter pursuant to Federal Rule of Civil Procedure 4(m).

Plaintiff's motion for summary judgment or in the alternative to strike (Dkt. #92, filed Dec. 3, 2010) is **denied** as discussed in Section III.C. Additionally, Plaintiff's motion for a ruling (Dkt. #105, filed Feb. 22, 2010) is **moot**. The court defers Plaintiff's motion to compel (Dkt. # 127, filed May 10, 2010) until the pretrial conference as set below.

Plaintiff's motion for preliminary injunction or for temporary restraining order (Dkt. # 121, filed Apr. 15, 2010) is **moot**, as Plaintiff has been released from the custody of the South Carolina Department of Corrections (SCDC).

# I. FACTS

Taken in the light most favorable to Plaintiff, the facts are as follows. On January 11, 2008, Plaintiff, a former inmate of the South Carolina Department of Corrections (SCDC), was housed in the Special Management Unit (SMU) of Lieber Correctional Institution (LCI).[3] Defendant Lt. Kevin Williams (Williams) approached Plaintiff's cell and told Plaintiff that he had been ordered removed from his cell and his cell inventoried based upon an incident which allegedly occurred on January 10, 2008.[4] Compl. at 3 (Dkt. # 1, filed Dec. 11, 2008). Plaintiff "told Lt. Williams that he never threatened Nurse Frazier [sic] [on January 10, 2008] and . . . that [there] was no way he was giving up his property for an incident that took place the day before." *Id.* Williams then "told his officers to suit up and roll on plaintiff." *Id.* Plaintiff avers that

> I offered to come to the door and be cuff[ed], but my defendants neglected [sic] my offer. They then got themselves into position and without giving me any directives to come to the door and be cuff[ed], my cell door was opened and defendants entered my cell and pulled me down to the ground.

Pl.'s Aff. at 2 (Dkt. # 82-1, filed Nov. 23, 2009). Plaintiff attests that

> I wasn't doing any resisting while lying helpless on the ground [and] defendant Vonmutius [sic] yell[ed] for someone to give him some gas. That once defendant Vonmutius [sic] receive[d] a gas can, he put the gas can directly in my face and mace[d] me from point blank range. That when I reacted to being mace[d] and turned my head, I felt myself being hit a couple more times by defendants. At that time I told defendants to stop hitting me.

---

[3]Plaintiff was released from custody on September 1, 2010.

[4]Plaintiff avers that "on 1-10-08 during pill line Nurse Fraser wrote me up for threatening to inflict harm on an employee for allegedly stating You [sic] want me to throw shit on you." Pl.'s Aff. at 1 (Dkt. # 82-1, filed Nov. 23, 2010).

Pl.'s Aff. at 3.[5]  Plaintiff avers that once removed from his cell, Defendants Brighthart and Von

Mutius "began punching me in the head and body area." *Id*. at 3.

Plaintiff was carried, after being shackled and handcuffed, from the immediate area and

placed in a restraint chair for several hours.  Plaintiff avers that

> after I was fully secured in the altered restraint chair, defendant Vonmutius [sic] put
> a black mask over my head covering my face.  The part of the mask where I was
> suppose[d] to breath[e] out of was put in the back of my head instead of the front of
> my face.

*Id*. at 4.  Plaintiff avers that after his placement in the restraint chair, Defendant Nurse Denise

Norwood (Norwood) came and examined him, and that she "told one of the defendant officials to

give her a wet paper towel. After she received the paper towel, she wiped my face with it one time

which irritated the gas and cause[d] my face and eyes to burn worse." *Id*. at 5.  Plaintiff attests that

after Norwood wiped his face and departed, he was not allowed to further wash his face and eyes

during the approximately four hours he was restrained in the chair.

---

[5]This averment is slightly different from the allegation contained in Plaintiff's verified
complaint.  In his Complaint, Plaintiff contends that Von Mutius maced him and then stated "die
motherfucker."  Compl. at 3-4 (Dkt. # 1, filed Dec. 11, 2008).  Defendant Sgt. Karl Von Mutius
(Von Mutius) presents an affidavit wherein he attests that

> I approached Peoples' cell and gave him a directive to back up to his flap in order
> to be handcuffed for the inventory [of his cell].  Peoples refused to comply with my
> directives, and became belligerent.  A forced cell movement team was therefore
> assembled and activated pursuant to institutional policy.  I was part of that team, and
> acted as the shield man.  Lieutenant Williams then requested that Peoples come to
> his door to be handcuffed. He again refused.  Because his behavior escalated and he
> refused direct orders, I discharged my chemical munitions briefly in his facial area.
> Peoples thereafter complied.

Aff. of Karl Von Mutius at 2 (Dkt. # 63-2, filed Sept. 15, 2009).

A videotape of this incident was made by an SCDC employee.[6]  The videotape shows the forced cell movement team assembled outside Plaintiff's cell.  These five (5) officers are wearing black vests and helmets with protective face shields.  The videotape shows these officers entering Plaintiff's cell and a brief struggle.  During the initial moments of the encounter in the cell, an officer is heard stating either "cuff his legs" or "cover his face."  Another officer (*not* Von Mutius) instructs someone to "use gas," and then "Von, use gas."  An officer (not suited with vest and/or helmet) can be seen handing what presumably is a can of mace into the knot of officers, and Von Mutius, who was the "shield man" and the first officer to enter Plaintiff's cell, then yells "give me some gas, give me some gas."[7]  Von Mutius thereafter discharges chemical munitions into Plaintiff's face.

As noted above, the videotape provides evidence to contradict some of Plaintiff's averments.  For example, Plaintiff avers that he was not resisting the officers' efforts to control him while the extraction team was in his cell.  The videotape shows otherwise.  The videotape does not depict Plaintiff placidly standing with his back to the door, waiting to be handcuffed. Rather, upon opening Plaintiff's cell door, the extraction team is met with what appears to be Plaintiff's mattress blocking entry. The officers then enter Plaintiff's cell and forcefully place him on the ground.  The videotape

---

[6]A copy of the videotape of this incident was provided to the court for review, but was not filed in the record of this matter.  Because this videotape was reviewed and referred to in the Report and this Order, the court directed that Defendants provide a copy of the videotape to the Clerk and file notification of having done so.  *See* Order (Dkt. # 136, filed Sept. 13, 2010) & Letter (Dkt. # 138, filed Sept. 16, 2010).

[7]Von Mutius avers in his affidavit that "[b]ecause [Plaintiff's] behavior escalated and he refused direct orders, I discharged my chemical munitions briefly in his facial area.  Peoples thereafter complied."  Von Mutius Aff. at 2.  The videotape contains no audible direct orders by Von Mutius.

also shows that Plaintiff is not, contrary to his averments, compliant with officers' actions in attempting to subdue and handcuff him.

Additionally, Plaintiff avers that after he was removed from his cell and taken to the restraint chair, a "spit" mask was purposefully applied backwards by Defendant Von Mutius. Plaintiff avers that this occurred "after he was fully secured in the restraint chair." However, it is clear from a review of the videotape that the mask was placed on Plaintiff correctly (with the solid portion in the back), that the placement of the mask was prior to Plaintiff being "fully secured" in the restraint chair, and that the officer who placed the mask on Plaintiff was *not* Defendant Von Mutius, but rather an officer who was not one of the five members of the forced cell extraction team.[8]

However, the videotape does not appear to have been a continuous recording. In other words, it appears that the camera operator may have turned the camera on and off, or that the camera malfunctioned in some way. Plaintiff attempts to argue that the circumstance of the videotape being incomplete is much more nefarious. However, in either circumstance (whether innocent or intentional), the videotape does not fully record the officers' actions after Plaintiff was removed from his cell. Plaintiff avers that while he was prone on the floor of the cellblock, Brighthart and Von Mutius "began punching me in the head and body area." Pl.'s Aff. at 3. Plaintiff also attests that "[a]fter my defendants stop[ped] assaulting me, defendant Palmer took his knee and put it on

_____

[8]The individual officers on the videotape are not identified except for Von Mutius, who indicates in his affidavit that he was the shield man for the forced cell extraction team. However, an African-American officer is seen at the beginning of the videotape ensuring that the five officers on the team understand their assignments, and it appears from the videotape that it was this same officer who initially requested a "spit" mask from the control station and placed the mask on Plaintiff. Von Mutius appears to be Caucasian.

my neck and began smashing my face into the ground while other defendants forcefully applied handcuff restraints on me." *Id.*

## II. DEFENDANTS TO BE DISMISSED

### A. LACK OF SPECIFIC ALLEGATIONS

It is well-settled that Plaintiff must include allegations against a specific individual to properly allege § 1983 liability, and it must be affirmatively shown that the official charged acted personally in the deprivation of Plaintiff's rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Plaintiff's allegations as to Defendants Nunnally, Williams, Cox, Selby, and Smith do not survive Defendants' motion for summary judgment. Plaintiff has made no showing, other than conclusory assertions regarding "defendants" that these Defendants participated in the alleged application of excessive force during the forced cell movement, placement in the restraint chair, or otherwise violated Plaintiff's constitutional rights.[9] Additionally, the videotape clearly shows that Plaintiff has failed to identify the correct individual who placed the "spit" mask on him. Therefore,

---

[9]Plaintiff does not deny that his condition was evaluated by Norwood, and that she cleaned his face with a wet paper towel after he told her he had been maced. As correctly noted by the Magistrate Judge, Plaintiff's claims relating to the further actions of "Defendants" regarding a purported failure to allow him to wash the mace from his face would, at most (if defendants had properly been identified), raise a claim of negligent action, which is not actionable under § 1983. *See* Report at 9-11. Therefore, if they were properly identified, "Defendants" would also be entitled to summary judgment as to the claims of deliberate indifference.

Additionally, Plaintiff includes assertions in his complaint that Defendants "conspired" with each other to deprive him of certain constitutional rights. While this court is required to liberally construe *pro se* pleadings, even in the light most favorable to Plaintiff, these assertions "are no more than conclusions, [and] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009). Plaintiff filed a motion amend his complaint to include "conspiracy" claims after Defendants moved for summary judgment. The Magistrate Judge to whom this case was previously assigned denied his motion. *See* Order Dkt. # 101 (filed Feb. 18, 2010).

any allegations regarding purported constitutional violations regarding the placement of the "spit" mask fail.

Therefore, Defendants Nunnally, Williams, Cox, Selby, and Smith are granted summary judgment and are dismissed from this matter with prejudice.[10] To the extent Defendant Von Mutius is alleged to have committed constitutional violations relating to the placement of the "spit mask,"these contentions fail and Defendant Von Mutius is entitled to summary judgment on any such claim.

## B. DEFENDANT NOT SERVED

The record reflects that Defendant Nurse Denise Norwood was never served with the summons and complaint in this matter. *See* Dkt. # 23 (filed Feb. 23, 2009). This issue is complicated by the haphazard inclusion of all "Defendants" in the Answer and Motion for Summary Judgment. However, there is no evidence that counsel had Norwood's authority to answer on her behalf. Therefore, this court's summary judgment analysis is applicable to the properly-served Defendants. Pursuant to Federal Rule of Civil Procedure 4(m), Defendant Norwood is dismissed from this matter without prejudice.

## III. REPORT OF THE MAGISTRATE JUDGE

The Report concludes Defendants should be granted summary judgment as to Plaintiff's claim for excessive force, as the Report finds there is no evidence in the record "[b]esides Plaintiff's own conclusory allegations" that he was "punched, kicked, or dropped on his face during the forced cell movement." Report at 7 (Dkt. # 128, filed July 30, 2010).

---

[10]For the reasons discussed below in III.A.2(a) & III.A.2(b), Defendant Palmer is also granted summary judgment and is dismissed from this action with prejudice.

However, Plaintiff contends under oath that Von Mutius maced him at "point blank" range when he was not resisting, that Von Mutius and Brighthart assaulted him by "punching" him after his removal from his cell and prior to his placement in the restraint chair, and that Von Mutius and Palmer "began forcefully pulling my arms up in the air from behind causing me extreme pain while I was standing by the control booth. I was begging my defendants to let my arms down." Pl.'s Aff. at 3. Plaintiff makes no allegations that any Defendant kicked him. *See* generally Compl. & Pl.'s Aff.

Finally, Plaintiff avers that he was placed in a restraint chair which he contends was "altered," and that Von Mutius "intentionally tighten[ed] the restraints and chains on Plaintiff with the intent to cause harm pain [sic]." Compl. at 4.

## A. EXCESSIVE FORCE

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In the prison context, it "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). An inmate's Eighth Amendment claim involves a subjective component and an objective component. "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.* "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

10

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley*, *supra*, 475 U.S. at 320–21; *see also Wilkins v. Gaddy*, 559 U.S. ___ , 130 S. Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm' . . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 130 S. Ct. at 1179 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

To prove the subjective component, Plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. The state of mind required in excessive force claims is "wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322. "Put differently, the core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Iko*, 535 F.3d. at 239 (internal quotations and citation omitted).

In *Whitley*, *supra*, the Supreme Court set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness": (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321 (internal

quotations omitted) (applying these factors in a prison riot case); *see Hudson*, 503 U.S. at 7 (extending the *Whitley* standard "to all allegations of excessive force").

The Fourth Circuit's decision in *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996), provides additional guidance for courts when considering claims relating to the use of mace, tear gas, or other like substances. These additional considerations inform the second and fourth prongs of the *Whitley* test, as "it is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary for the sole purpose of infliction of pain.'" *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)).

For this reason, the Fourth Circuit has closely scrutinized the use of tear gas or mace in correctional facilities. The Fourth Circuit has held that

> mace can constitutionally used in small quantities to prevent riots and escapes, or to control a recalcitrant inmate. . . . A limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate. Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain.

*Id*. (quotations and citations omitted). However, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison environment," as "even when properly used, such weapons 'possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim.'" *Id*. (quoting *Slackan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

"An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, *supra*, 130 S. Ct. at 1178. However,

"[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 1178-79.

## 1. FORCE USED INSIDE CELL

Plaintiff avers that he was not resisting officers' attempts to gain control of him in his cell when Von Mutius sprayed him in the face with mace "at point blank range." If Plaintiff's averments were the only evidence available in the record, the court would deny Von Mutius summary judgment on his use of chemical munitions, as use of chemical munitions on a compliant inmate would be a constitutional violation. However, the videotape shows that Plaintiff was not compliant, and therefore Von Mutius had reasonable justification under the circumstances for the use of chemical munitions. *See Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (holding after a review of a use of force haircut involving a restraint chair that: "Although the undersigned does not make a credibility determination, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'") (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Plaintiff does not dispute that he told officers, when informed that he was to be "stripped out" of his cell for the alleged incident on January 10, 2008, "that it was no way I was giving up my property for an incident that allegedly took place the day before." Pl.'s Aff. at 2. The videotape clearly shows that a struggle ensued when the extraction team entered Plaintiff's cell. Additionally, at least one officer other than Von Mutius may have believed the circumstance warranted the use of chemical munitions, as an officer is heard stating, "Von, use gas." It is only *during* the struggle

and *after* this specific statement that Von Mutius obtains and deploys chemical munitions.[11]  Finally, the record indicates that Von Mutius deployed 4.9 grams of "MK-4 Top Cop" mace.[12]

Evaluating the totality of the circumstances, the court finds that the force used inside Plaintiff's cell, including the use of chemical munitions, "was applied in a good-faith effort to maintain or restore discipline."  *Iko*,  535 F.3d. at 239.  As to provocation, Plaintiff avers that he indicated to officers that he was not willing to be "stripped out" of his cell for an incident which allegedly occurred the day before, and the videotape shows that a struggle ensued when the extraction team entered Plaintiff's cell.  The amount of mace used by Von Mutius was 4.9 grams, and the videotape shows that the use of the mace was during the struggle between officers and Plaintiff.  Therefore, Defendant Von Mutius is granted summary judgment relating to his actions prior to Plaintiff's removal from his cell.[13]

---

[11]It appears, although it is by no means certain, that the statement "Von, use gas" may have been made by Williams, who, according to his affidavit, was the team leader.  Aff. of Kevin Williams at 2 (Dkt. # 63-3, filed Sept. 15, 2009).

[12]It appears this chemical munition was OC gas, commonly known as "pepper spray."  The court notes that the munition used in *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996), was CS gas, commonly known as "tear gas."

[13]Plaintiff's affidavit contends in several places that "defendants" hit him in the head while in his cell.  However, as noted above, the use of the all-encompassing term "defendants" is insufficient to individually identify which, if any, Defendants may have "hit" Plaintiff.  Moreover, the videotape does not show "Defendants" gratuitously hitting Plaintiff during the course of the struggle in his cell, but rather an extraction team engaged in attempting to gain control of Plaintiff as he struggled.

**2. FORCE USED OUTSIDE CELL**

As to the force applied outside his cell, Plaintiff avers that Defendants Von Mutius, Brighthart, and Palmer applied excessive physical force when Plaintiff was on the ground outside his cell. Specifically, Plaintiff avers that Von Mutius and Brighthart punched him "in the head and body area[,]" and after this purported assault, "defendant Palmer took his knee and put it on my neck and began smashing my face into the ground *while other defendants forcefully applied handcuff restraints on me*." Pl.'s Aff. at 3 (emphasis added). Additionally, Plaintiff avers that when he was taken to the restraint chair, "Von Mutius and defendant Palmer began forcefully pulling my arms up in the air from behind causing me extreme pain while I was standing by the control booth. I was begging my defendants to let my arms down." Pl.'s Aff. at 3.

*a. Von Mutius, Brighthart, and Palmer – Outside Cell*

While a forced cell movement may then have been appropriate under SCDC policy, based on the evidence currently in the record, the force alleged to have been used by Von Mutius and Brighthart after the extraction could be found by a fact-finder to have been applied "maliciously and sadistically for the very purpose of causing harm." *Whitley*, *supra*, 475 U.S. at 320-21. "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, *supra*, 130 S. Ct. at 1178. However, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 1178-79.

Viewing the facts alleged in the light most favorable to the non-moving party, Plaintiff's contentions in his Verified Complaint and averments create a genuine issue of material fact as to whether force was applied by Defendants Von Mutius and Brighthart after the extraction and, if so,

whether it was done "maliciously and sadistically for the very purpose of causing harm." *Whitley*, *supra*, 475 U.S. at 320-21.

As to Defendant Palmer, Plaintiff's averment is that Palmer "took his knee and put it on my neck and began smashing my face into the ground *while other defendants forcefully applied handcuff restraints on me*." Pl.'s Aff. at 3 (emphasis added). Plaintiff's attestation and the videotape show that Palmer's actions were taken not "maliciously and sadistically for the very purpose of causing harm," but rather in conjunction with other officers' efforts to handcuff Plaintiff prior to his removal to the restraint chair. Therefore, Palmer is entitled to summary judgment as to this claim.

### b. Von Mutius and Palmer – Restraint Chair Area

Plaintiff avers that "Von Mutius and defendant Palmer began forcefully pulling my arms up in the air from behind causing me extreme pain while I was standing by the control booth. I was begging my defendants to let my arms down." Pl.'s Aff. at 3.[14] The videotape shows that while these Defendants did pull up Plaintiff's arms and that Plaintiff was bent over at the waist, their actions were taken in conjunction with the removal of Plaintiff's jumpsuit and his placement in the restraint chair, and there is no evidence that such actions were undertaken "maliciously and sadistically for the very purpose of causing harm." For this reason, Defendants Von Mutius and Palmer are entitled to summary judgment on this claim. As there are no remaining claims against Defendant Palmer, he is dismissed from this action with prejudice.

---

[14]Plaintiff is not heard making any such statements on the videotape. However, even though the environment was quite noisy and the audio portion may not have captured oral statements made by Plaintiff, he is heard responding to another prisoner who calls his name, asking, "Peoples? You all right?" Whereupon Plaintiff is heard answering, "Yeah, they done hung me . . . I'm fucking still . . . ." Further statements made by Plaintiff are unintelligible. Attachment to Dkt. # 138 at 6:24.00.

## B. Placement in Restraint Chair

The Verified Complaint contends that Von Mutius "intentionally tighten[ed] the restraints and chains on Plaintiff with the intent to cause harm pain [sic]." Compl. at 4. Defendants do not address this issue in their motion for summary judgment, nor is it specifically addressed by the Magistrate Judge.[15]

This claim fails based upon Plaintiff's own pleadings and averments, as it is clear from the videotape that Von Mutius did not place the leg irons on Plaintiff.[16] Therefore, to the extent Plaintiff identifies Defendant Von Mutius as the individual who placed restraints upon Plaintiff during his initial placement in the restraint chair, Von Mutius is granted summary judgment as to this aspect of Plaintiff's claim.

## C. Plaintiff's Pending Motions

Based upon the Report's recommendation that Defendants be granted summary judgment, the Report does not specifically address Plaintiff's pending motions for "Summary Judgment or to Strike" (Dkt. # 92, filed Dec. 3, 2009), for Ruling (Dkt. # 105, filed Feb. 22, 2010), and to Compel (Dkt. # 112, filed June 3, 2010).

As noted above, Plaintiff's motion for Preliminary Injunction or for Temporary Restraining Order (Dkt. # 121, filed Apr. 15, 2010) is **moot**, as Plaintiff has been released from SCDC custody.

---

[15]Plaintiff fails to identify specifically who may have altered the restraint chair. *See* Compl. at 5 ("the Administrators at Lieber C-I" altered the chair). Therefore, even if Plaintiff's contentions regarding the alteration of the chair had merit, his claims would fail.

[16]In his affidavit, Plaintiff identifies "defendants" as having tightened the restraints. This general identification of "defendants" would, of course, be insufficient for this claim to survive without Plaintiff having identified Von Mutius in the complaint as the individual who applied the restraints.

Plaintiff seeks summary judgment based upon contentions that Defendants "secretly withheld the videotape of the incident," Mot. at 2 (Dkt. # 92, filed Dec. 3, 2009), and that Defendants have fabricated evidence and filed false affidavits. These issues could certainly affect the parties' evidentiary presentation. Plaintiff has failed to meet the burden of showing an absence of genuine issues of material fact on these issues. Therefore, Plaintiff's motion for Summary Judgment or to Strike is **denied**.

Plaintiff's motion for a Ruling (Dkt. # 105, filed Feb. 22, 2010) is **moot.**

Plaintiff's pending Motion to Compel will be heard at a pretrial conference, discussed below.

## IV. QUALIFIED IMMUNITY

The court declines to adopt the Report's discussion of qualified immunity. There has been a showing of genuine issues of material fact as to the narrow issue of alleged deprivation of constitutional rights by Von Mutius and Brighthart after the removal of Plaintiff from his cell and prior to his placement in the restraint chair, and these rights were clearly established at the time of this alleged incident.

### A. QUALIFIED IMMUNITY STANDARD

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Defendants seek summary judgment based on qualified immunity. Determining whether an official is entitled to qualified immunity generally requires a two-step inquiry. *See generally Pearson v. Callahan*, 555 U.S. --- , 129 S. Ct. 808

(2009).[17]  The court must determine whether, taken in the light most favorable to the plaintiff, the facts alleged show that the official's conduct violated a constitutional right. *Parrish v. Cleveland*, 372 F.3d 294, 301-02 (4th Cir. 2004).  If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail. *Id*.  If the facts do establish such a violation, however, the court must determine whether the right violated was clearly established at the time of the alleged offense. *Id*.  In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id*.  "If the right was not clearly established in the specific context of the case –that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted –then the law affords immunity from suit." *Id*. (citations and quotations omitted).  "Fourth Circuit precedent is one source for determining whether the law was clearly established at the time of the alleged violation." *Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (quoting *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir.1998) (en banc)) ("In determining whether a right was clearly established at the time of the claimed violation, 'courts in

---

[17]In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court held that the test for determining qualified immunity requires that the court make a two-step inquiry "in proper sequence."  In *Pearson*, however, the Court found that it is not necessary that the court review these steps in a particular order, as the inquiry process is left to the court's discretion. *Pearson*, 555 U.S. at ---, 129 S. Ct. at 818.  Thus, this court may first inquire whether the right allegedly violated was clearly established at the time of the alleged offense. *Id*.  If the right was not clearly established at the time of the alleged offense, then the court's inquiry need go no further. *Pearson* "does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*., 555 U.S. at ---, 129 S. Ct. at 821.

this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . . .'").

### B. "CLEARLY ESTABLISHED"

As discussed above, an inmate's Eighth Amendment excessive force claim involves a subjective component and an objective component. A plaintiff must meet a heavy burden to satisfy the subjective component of the claim; specifically, Plaintiff must prove that an officer acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. As noted above, the state of mind required in excessive force claims is "wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322. "Put differently, the core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Iko*, 535 F.3d. at 239 (internal quotations and citation omitted).

"[W]hile the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

As noted above, a genuine issue of material fact exists whether Defendants Von Mutius and Brighthart applied physical force and, if so, whether it was done "maliciously and sadistically to cause harm," or in a good faith effort to maintain or restore discipline. Therefore, these Defendants are not entitled to summary judgment on grounds of qualified immunity.

### V. OTHER PENDING MOTIONS

Plaintiff has filed a motion to compel. Dkt. #127 (filed May 10, 2010). The court will address this motion at a pretrial conference set for **October 7, 2010**, at **2 p.m.** The Clerk will send notice in addition to this Order.

## VI. CONCLUSION

Defendants Von Mutius and Brighthart's motion for summary judgment is **denied** as to the claimed use of excessive force which allegedly occurred after Plaintiff had been removed from his cell and prior to his placement in the restraint chair, and **granted** as to all other claims. A pretrial conference will be held at **2:00 p.m. on October 7, 2010**, in Courtroom #2 , Matthew J. Perry, Jr., United States Courthouse, 901 Richland Street, Columbia, South Carolina.[18]

Defendants Nunnally, Williams, Cox, Selby, Palmer, and Smith are **granted** summary judgment, and these Defendants are dismissed from this matter with prejudice.

Defendant Norwood is dismissed from this matter without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

Plaintiff's motion for preliminary injunction (or for temporary restraining order) is **moot**.

Plaintiff's motion for summary judgment or in the alternative to strike (Dkt. #92, filed Dec. 3, 2010) is **denied**.

Plaintiff's motion for a ruling on summary judgment and/or in the alternative to strike Defendants' answer is **moot**. The court defers Plaintiff's motion to compel (Dkt. # 127, filed May 10, 2010) until the pretrial conference as set below.

---

[18]Plaintiff is specifically reminded that security measures require that he produce photo identification to enter any federal courthouse.

**IT IS SO ORDERED**.

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 21, 2010